Slip Op. 13 - 91

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| CATFISH FARMERS OF AMERICA, *et al*., | : | |
| Plaintiffs, | : | |
| v. | : | Before: R. Kenton Musgrave, Senior Judge |
| UNITED STATES, | : | Court No. 11-00252 |
| Defendant, | : | |
| and | : | |
| IDI CORPORATION and THIEN MA SEAFOOD COMPANY, | : | |
| Defendant-Intervenors. | : | |

## OPINION AND ORDER

[Remanding seventh antidumping new shipper reviews for reconsideration of certain aspects.]

Dated: July 22, 2013

*Valerie A. Slater*, *Jarrod M. Goldfeder*, *Natalya D. Dobrowolsky*, and *Nicole M. D'Avanzo*, Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington DC, for the plaintiffs.

*Courtney S. McNamara*, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington DC, for the defendant. On the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White*, *Jr.*, Assistant Director.

*Matthew J. McConkey* and *David M. Wharwood*, Mayer Brown LLP, of Washington DC, for defendant-intervenors IDI Corporation and Thein Ma Corporation.

Musgrave, Senior Judge:  This action contests the final results of the seventh new

shipper review of the antidumping duty order on three species of *Pangasius* fish conducted by the

International Trade Administration of the United States Department of Commerce ("Commerce" or "Department"). *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results of the Antidumping Duty New Shipper Reviews*, 76 Fed. Reg. 35403 (June 17, 2011), PDoc 246 ("*Final Results*") and the issues and decision memorandum ("I&D Memo") accompanying those results, PDoc 242, 76 ITADOC 35403 (June 10, 2011). The review period is August 1, 2009 through February 15, 2010. For the *Final Results*, Commerce determined zero margins of dumping for the respondents, IDI Corporation ("IDI") and Thein Ma Seafood Company ("THIMCO"), who are fish processors of Vietnam. and defendant-intervenors here. The plaintiffs, domestic industry petitioners,[1] move for judgment on the administrative record. The defendant argues for remand of some of the issues and for sustaining the results in all other respects, and the defendant-intervenors submit no substantive comments. The matter will be remanded accordingly, as follows.

*Discussion*

Jurisdiction is properly here pursuant to 19 U.S.C. §1516a(a)(2)(B)(iii) and 28 U.S.C. §1581(c). Commerce's antidumping duty determinations are to be upheld unless "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. §1516a(b)(1)(B)(i).

The I&D Memo is dated approximately two and half months after Commerce issued its issues and decision memorandum for the sixth administrative and new shipper reviews. *Cf*. I&D

---

[1] Plaintiffs are Catfish Farmers of America and individual U.S. domestic catfish processors America's Catch, Consolidated Catfish Companies, LLC d/b/a Country Select Fish, Delta Pride Catfish Inc., Harvest Select Catfish Inc., Heartland Catfish Company, Pride of the Pond, and Simmons Farm Raised Catfish, Inc (collectively, plaintiffs or Catfish Farmers).

Memo *with Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results of the Sixth Antidumping Duty Administrative Review and Sixth New Shipper Review*, 76 Fed. Reg. 15941 (Mar. 22, 2011) ("*Sixth Reviews*") and accompanying issues and decision memorandum, 76 ITADOC 15941 (Mar. 14, 2011).  For purposes of this matter, the relevant reasoning of the I&D Memo is a virtual restatement of Commerce's rationale for its similar determinations in the *Sixth Reviews*, albeit tailored to the circumstances of respondents IDI and THIMCO.

The plaintiffs' challenges to the *Sixth Reviews* via Court Nos. 11-00109 and 11-00110 resulted in remands to Commerce for further consideration, *see* Slip Ops 13-63 & 13-64 (May 23, 2013), and in this matter they restate two broad claims pertaining to Commerce's surrogate valuation methodology, namely the choice in the *Final Results* of Bangladesh rather than the Philippines as the primary surrogate country upon which to value the respondents' factors of production, and Commerce's decision to use import statistics as a surrogate value for the respondents' fish waste and fish skin by-products.  In the interest of brevity, familiarity with slip opinion 13-63 will therefore be presumed, but before turning to the heart of the plaintiffs' complaint, first addressed is Commerce's request for remand in part, as follows.

I.  Surrogate Valuation of Fish By-Products

A.  Fish Waste Valuation -- Voluntary Remand

In the *Final Results*, as in the *Sixth Reviews* and prior reviews, Commerce again selected surrogate values for fish waste based upon Philippine import statistics for Harmonized Tariff Schedule ("HTS") category 0304.90 (other fish meat of marine fish) maintained in the World Trade Atlas ("WTA") and again rejected the plaintiffs' proffer of price quotes obtained from Vitarich

Corporation, a Philippine fish and seafood processor, for per kilogram pickup prices of *Pangasius*

fish waste (and trimmings and skin) in Philippine pesos.  *See Final Results* I&D Memo at 30-32.

The rationale for the determination being virtually the same as for the *Sixth Reviews*, the plaintiffs

here likewise repeat their arguments from those reviews.  *See*, *e.g.*, Slip Op 13-63 at 4-6.  Commerce,

again without admitting error, requests remand in order to reconsider surrogate fish waste valuation.

The matter will be remanded therefor.  *See id*.  Upon remand Commerce will also address the

plaintiffs' concerns as articulated in their briefs, and if on remand Commerce continues to be

inclined toward reliance upon HTS data, it will clearly explain why neither the Vitarich price quote

nor the previously-relied-upon Indian price quotes for fish waste were not the best available

information to value fish waste as compared with the HTS data.

        B.  Fish Skin Valuation

        In the *Final Results*, as in the prior *Sixth Reviews*, Commerce again valued the fish

skin by-product by selecting WTA import price statistics for Bangladesh HTS category 2301.20

(flours, meals, and pellets, of fish or of crustaceans).  *See Seventh New Shipper Review* I&D Memo

at 17.  The plaintiffs again here repeat their previous arguments.  *See* Slip Op. 13-63 at 6-7.  And

again, the defendant asks that the instant determination be sustained.  There being no arguable

distinction in this matter from the discussion in slip opinion 13-63 on the issue, for the reason stated

therein Commerce shall reconsider the broken meat and fish skin valuations from a clean slate,

alongside its reconsideration of the proper valuation of fish waste, *supra*.  *See id.*

II. Surrogate Country Selection

The plaintiffs' main challenge here, once again, is to Commerce's consideration of the data leading to its selection of Bangladesh as the primary market surrogate. *Cf. Final Results* I&D Memo at 7-14 *with* Slip Op. 13-63 at 7-16. The relevant portions of the administrative record for this review are the same as those described in the prior opinion, the only difference here being submission from IDI and THIMCO to Commerce of copies of the same worksheets described in the prior opinion that were obtained from the Bangladesh Department of Agriculture and Marketing ("DAM"). *See* Slip Op. 13-63 at 9-11. *Cf.* Respondents' Second Surrogate Value Submission (Apr. 12, 2011), PDoc 92, at Ex. 1, *with* Court No. 11-00109, Interested Party Second Surrogate Value Submission (Nov. 10, 2010), PDoc 195, at Ex. 7 & Ex. 7A. As between the Bangladesh data and the Philippines data, Commerce's rationale for its selection of Bangladesh as the choice of surrogate country for the *Final Results* is identical in formulation to that for the *Sixth Reviews*:

> [W]e find that both sources are publicly available, from a potential surrogate country, contemporaneous with the POR, broad-market averages, and equally specific to the main input. Simultaneously, both can be considered equally to contain information which suggests the prices are not solely farm-gate prices. Given this degree of equivalence with respect to these factors, we examined the information upon which the Bangladeshi and Philippine potential surrogate whole live fish values were based, concluding that the Bangladeshi data represent a fuller set of data more appropriate for use as [a surrogate value]. Therefore, as a result of the totality of the information considered above, we conclude that the DAM data represent the best available data on the record with which to value the whole live fish input. Given the significance of the whole live fish input in the calculation of [normal value], we therefore conclude that the choice of Bangladesh offers more reliable [surrogate value] information and thus select Bangladesh as the primary surrogate country for purposes of these final results.

I&D Memo at 13.

Court No. 11-00252                                                          Page 6

Commerce's analysis of surrogate country selection for the *Final Results*, the

plaintiffs' arguments thereon, and the defendant's response thereto, are all identical in substantive

respects to the papers filed for Court No. 11-00109.  Having reflected upon the issue at length, albeit

in the circumstances pertinent to slip opinion 13-63, the court perceives no reason to justify a

different outcome here, in the matter at bar, which will therefore be remanded for further

consideration in accordance with that opinion:

> As it is unclear what impact any particular factor has had on Commerce's analysis
> to this point, remand of the entire issue of surrogate country selection as a whole is
> appropriate, and without precluding reconsideration of the entire record for and
> against the selection of the primary surrogate country upon which to value the
> respondents' factors of production.  If Commerce also deems it necessary to gather
> additional information, it has the discretion to reopen there record.

Slip Op. 13-63 at 34.

### *Conclusion*

For the reasons stated above and in slip opinion 13-63 , the matter will be, and hereby

is, remanded for reconsideration and further explanation.

The results of remand shall be filed by November 1, 2013, comments thereon, if any,

by December 2, 2013, and rebuttal commentary, if any, by December 17, 2013.

**So ordered**.

/s/  R. Kenton Musgrave
R. Kenton Musgrave, Senior Judge

Dated: July 22, 2013
        New York, New York